UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELLY WARDELL,<br><br>    Plaintiff,<br><br>    v.<br><br>HILDA SOLIS, Secretary, United States Department of Labor,<br><br>    Defendant. | Civil Action No. 09-02079 (JEB) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Kelly Wardell is employed by Defendant, the U.S. Department of Labor, as a GS-12 criminal investigator in the Office of Labor Racketeering and Fraud Investigations (OLRFI). Approximately six months after returning from maternity leave, Plaintiff was transferred to a different unit of the OLRFI. She claims that Defendant discriminated against her on the basis of sex — in particular, by treating new mothers differently than new fathers — both in transferring her and in failing to nominate and promote her to a GS-13 position. Defendant has now moved for summary judgment. Because no reasonable jury could find that Defendant's stated reasons for declining to promote Plaintiff were pretextual, the Court will grant Defendant's Motion with respect to the promotion claim. As disputes of material fact preclude summary judgment on the transfer claim, however, it will deny Defendant's Motion on that issue.

**I.    Background**

    Plaintiff was initially hired by the Washington Regional Office (WRO) of the OLRFI as a GS-5 student trainee while she was still in college in 2002, and she was promoted to a GS-7

criminal investigator position (also referred to as a "special agent") upon her graduation later that year. Pl.'s Resp. to Def.'s SUMF, ¶¶ 1-2. In March 2005, she was transferred as a GS-9 criminal investigator to the Protective Operations Unit (POU), a unit of the OLRFI created after September 11, 2001, to provide day-to-day protection to the Secretary of Labor, on a temporary detail assignment. Id., ¶ 4; Mot., Exh. 21 (Decl. of Thomas Farrell), ¶ 4. She was promoted to the GS-11 level a few months later and was officially reassigned to the POU in October 2005. Pl.'s Resp. to Def.'s SUMF, ¶ 4.

Dennis Chomicki, the Special Agent in Charge (SAC) of the POU during Plaintiff's tenure there, promoted Plaintiff to a GS-12 position on August 6, 2006. Id., ¶ 5. Approximately ten months later, in June 2007, Plaintiff asked SAC Chomicki when she would be promoted to the GS-13 level, the top rung of the criminal investigator career ladder. Id., ¶¶ 6-7. Chomicki advised her that in order to receive a promotion she should continue to work on domestic and international trips and complete a protection class. Id., ¶ 6.

In November 2007, Plaintiff informed SAC Chomicki that she was pregnant. Id., ¶ 9. On or about January 31, 2008, she told SAC Chomicki that, per her doctor's advice, she would not be able to wear a weapons-and-equipment belt or carry a firearm for the remainder of her pregnancy. Id., ¶ 9; Mot., Exh. 8 (Decl. of Dennis Chomicki), ¶ 3. From February 3, 2008, until she began her maternity leave, accordingly, Plaintiff worked "light duty special assignments." Pl.'s Resp. to Def.'s SUMF, ¶ 9; Chomicki Decl., ¶ 3. She took maternity leave beginning May 11, 2008, and returned to work on August 18, 2008. Pl.'s Resp. to Def.'s SUMF, ¶ 10.

Plaintiff was transferred from the POU back to the WRO on February 15, 2009. Pl's Resp. to Def.'s SUMF, ¶ 13. She maintains that she did not seek — indeed, that she opposed — the transfer. Pl.'s SUMF, ¶ 25; Opp., Exh. 1 (Pl.'s Decl.) at 6. She alleges her transfer was

discriminatory, pointing in particular to statements made by SAC Chomicki both to her and to her former supervisor, John Dolce, about the difficulties new mothers face in the POU. See Pl.'s SUMF, ¶¶ 26-27; Pl.'s Decl. at 6; Opp., Exh. 2 (Aff. of John Dolce), ¶ 8. Assistant Inspector General (AIG) Thomas Farrell, the individual ultimately responsible for the transfer, however, has testified that Plaintiff was transferred because she herself requested it. See Mot., Exh. 15 (Aff. of Thomas Farrell) at 2; see also id., Exh. 14 (Farrell Email, October 16, 2008). Plaintiff was never nominated for a promotion to the GS-13 level position. Pl.'s Resp. to Def.'s SUMF, ¶ 14.

Plaintiff filed an administrative complaint of discrimination with the DOL Civil Rights Center on April 23, 2009. Id., ¶ 16. That complaint was dismissed following Plaintiff's filing of the instant suit on November 3, 2009. Id., ¶ 17. Her Complaint alleges that she was discriminated against on the basis of her gender both when Defendant did not nominate her for a GS-13 promotion after she returned from maternity leave and when Defendant transferred her from the POU to the WRO. Compl., ¶¶ 7.1.1-7.1.2. Defendant has now filed a Motion for Summary Judgment.[1]

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

---

[1] In considering Defendant's Summary Judgment Motion, the Court has reviewed Defendant's Motion, Plaintiff's Opposition, and Defendant's Reply.

for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50.

**III.   Analysis**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion sex or national origin . . . ." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008). "[W]here the plaintiff lacks direct evidence of discrimination," courts have traditionally followed the three-step "burden-shifting approach" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether the second element has been satisfied. Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006). If "an employer has asserted a legitimate, non-discriminatory reason" for its employment decision, however, our Circuit has eschewed focusing on the McDonnell Douglas *prima facie* case inquiry in favor of a more streamlined approach:

> [I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

Brady, 520 F.3d at 494.

With regard to both of the alleged incidents of discrimination, therefore, the Court must first determine whether Plaintiff suffered an adverse employment action. Because Defendant has proffered nondiscriminatory explanations for both of its employment decisions, the Court will then follow Brady and its progeny in determining whether Plaintiff has produced sufficient

5

evidence for a reasonable jury to find that Defendant's asserted reason was pretextual and that Defendant in fact discriminated against her.

    A.  Failure to Promote

It is undisputed that Defendant's failure to promote Plaintiff constitutes an adverse employment action. See, e.g., Stella v. Mineta, 284 F.3d 135, 146 (D.C. Cir. 2002) ("no question that failure to promote is an 'adverse action'"). Defendant, however, has offered a legitimate, nondiscriminatory reason for declining to promote Plaintiff to a GS-13 position: "Plaintiff did not demonstrate that she could perform successfully at the GS-13 level." Mot. at 5 (citing id., Exh. 18 (Def.'s Resp. to Pl.'s First Disc. Requests) at 10-11). More specifically, "Plaintiff needed more experience doing advance work for events that had complicated logistics and security issues. She also needed formal protective operations training . . . ." Id. (internal citation omitted). SAC Chomicki, furthermore, has testified that Plaintiff lacked "comprehensive knowledge of protection" and that he believed further experience and training would have helped her obtain this knowledge. See Opp., Exh. 6 (Dep. of Dennis Chomicki) at 12.

The only remaining question, then, is whether Plaintiff has "produced sufficient evidence for a reasonable jury to find [this] reason was not the actual reason and that the employer intentionally discriminated against the plaintiff." Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (citing Brady, 520 F.3d at 493-95). Two preliminary issues are worthy of note here. First, Plaintiff was never competing against colleagues for a specific promotion; instead, investigators were promoted according to whatever timetable they merited. See Opp. at 11. Second, Plaintiff is not challenging Defendant's failure to promote her at any time prior to her return from maternity leave. "Plaintiff is claiming discrimination based on gender due to her being the mother of a newborn (as compared to the treatment of new fathers

6

who were special agents), not generally on the basis of gender. Plaintiff is not contending that Mr. Chomicki treated her unfavorably prior to her return from maternity." Pl.'s Resp. to Def.'s SUMF ¶ 15; see also Opp. at 3. The scope of the failure-to-promote claim, therefore, is quite limited: Plaintiff must provide evidence sufficient for a reasonable jury to find that Defendant's failure to nominate her for a promotion during the six-month window between her return from maternity leave and her transfer to the WRO was discriminatory.

Plaintiff has not made such a showing. She relies primarily on the testimony of her former supervisor, John Dolce, about her strong performance to challenge the veracity of SAC Chomicki's explanation. Dolce's testimony, however, merely confirms what is not in dispute: Plaintiff "was right on line to be promoted." Dolce Aff, ¶ 10. Chomicki's testimony is consistent with Dolce's in this respect; indeed, Chomicki suggests that Plaintiff may in fact have been promoted had she remained in the POU and taken the next available training session in the Spring of 2009. See Chomicki Dep. at 19-20.

Plaintiff also points to her performance appraisals in attempting to demonstrate that Defendant's nondiscriminatory explanation was pretextual. See Opp. at 8-9. While these appraisals certainly demonstrate that Plaintiff was performing satisfactorily, they do not establish that she was so well qualified for a promotion as to raise an inference of discrimination. On SAC Chomicki's 2008 GS-12 written evaluation, as Plaintiff emphasizes, her performance was rated "Exceeds" for three elements, "Meets" for five elements, and "Needs Improvement" or "Fails" for none. See Opp. at 8; Reply at 7; Opp., Exh. 3 (2008 Perf. Eval.). According to the ratings scale, however, this amounts only to an "Effective" overall rating — right in the middle of the five-level scale. See 2008 Perf. Eval.; see also Reply at 7. This rating was significantly lower than the "Outstanding" she received the year in which SAC Chomicki promoted her from

7

GS-11 to GS-12. See Opp., Exh. 6 (2006 Perf. Eval.). The written evaluations, therefore, are consistent with the testimony of both Dolce and Chomicki — Plaintiff's was on track for a promotion, but was not yet clearly entitled to one. The judiciary is simply not a "super-personnel department that reexamines an entity's business decisions" in close cases. Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (quoting Holcomb, 433 F.3d at 897) (internal quotation marks omitted).

Next, Plaintiff argues that SAC Chomicki's reliance on the training course she had not completed as a basis for declining to nominate her for a promotion was pretextual, pointing to Dolce's testimony that "this had never been a requirement" for the GS-13 position. See Opp. at 6-8 (quoting Dolce Aff., ¶ 10). Defendant, however, has provided evidence demonstrating that Dolce was mistaken and that, in fact, each individual promoted to the GS-13 level between 2000 and 2010 received comparable training. See Def.'s Resp. to Pl.'s First Disc. Requests at 10, 15-16.

Acknowledging that "each Agent was nominated on his or her own" such that "the promotion of one did not preclude others being promoted," Plaintiff does not devote much of her argument to comparing her qualifications to those of individuals who received promotions. Opp. at 11. It is worth noting, however, that each of the male agents whom Plaintiff identifies in her Complaint as having been promoted to GS-13 despite being hired into the POU after she was had earned outstanding performance evaluations, taken the formal protective-operations course, and possessed significant experience at the equivalent of the GS-13 level or higher in other agencies prior to coming to the POU. See Reply at 10; Chomicki Decl., ¶ 4; Def.'s Resp. to Pl.'s First Disc. Requests at 11-13, 15-16. In any event, even if Plaintiff could demonstrate that she was more qualified than others who were promoted — which she has not done — that would not be

sufficient. To support an inference of discrimination, a jury must be able to find Plaintiff was "significantly better qualified for the job." Holcomb, 433 F.3d at 897 (emphasis added). Such a showing has not been made here.

Finally, Plaintiff references Dolce's testimony that "SAC Chomicki told [him] that it was going to be harder for the [Plaintiff] to do protective assignments, since she was a mother" whereas "he didn't think that would be a problem" for "the other single parent on the detail (a male)." Dolce Aff., ¶ 7. That testimony, however, appears to concern the transfer, which is addressed in Section III.B, *infra*, not the failure to promote. See Mot., Exh. 27 (Chomicki Aff.) at 4 (providing context for this discussion and testifying that conversation took place just before Plaintiff's transfer).

In the final analysis, Plaintiff has provided evidence establishing that she was "right on line to be promoted." Dolce Aff., ¶ 10. Indeed, this may well have happened had she remained in the POU. She has not provided evidence, however, that her non-promotion during the short window between her return from maternity leave and her transfer was discriminatory. On the contrary, SAC Chomicki's explanation for declining to nominate her for a promotion both is supported by evidence and has remained consistent prior to and throughout this dispute. Defendant's Motion, therefore, is granted with respect to this claim.

B. Transfer

Plaintiff's second claim fares better. She argues that Defendant discriminated against her on the basis of her gender when it transferred her from the POU back to the WRO. In seeking summary judgment, Defendant first argues that the transfer was not an adverse employment action. To establish an adverse action "in the absence of diminution of pay or benefits, plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or

9

privileges of employment.'" Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)).

"[U]nder certain circumstances, a lateral transfer may qualify as an adverse action; whether it does or not is 'generally a jury question.'" Czekalski v. LaHood, 589 F.3d 449, 456 (D.C. Cir. 2009) (quoting Czekalski v. Peters, 475 F.3d 360, 364-65 (D.C. Cir. 2007)) (emphasis in original). If Plaintiff has proffered evidence sufficient for a reasonable jury to find that her transfer from the POU to the WRO left her with "significantly different responsibilities," Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)), Defendant is not entitled to summary judgment. See Czekalski v. Peters, 475 F.3d at 365 (if reasonable jury could find that transfer left plaintiff with "significantly diminished responsibilities, a court may "not take that question away from the jury").

Plaintiff has met that burden here. Although her salary was not officially changed upon her transfer, Plaintiff points to financial differences between working at the POU and at the WRO. She asserts that employees in the POU have the potential for greater earnings in certain special pay categories, better chances of being promoted, higher per diem for overseas travel, more flexible scheduling, and greater potential for earning frequent flyer miles. See Opp. at 17; Pl.'s Decl. at 9-12. More importantly, Plaintiff maintains that her responsibilities were significantly altered. "[T]he difference in the jobs," she argues, "is between that of a run-of-the-mill criminal investigator and someone who personally protects the life and safety of a member of the President's cabinet." Opp. at 16 (citing Pl.'s Decl. at 3-13). Defendant concedes that the responsibilities of the two units are different: "While POU's main duty is protection of the Secretary, the regional and field office's main duty is conducting criminal investigations." Mot. at 17. In fact, Defendant admits that "[Plaintiff's] primary duties transitioned back to conducting

criminal investigations" when she was transferred. Id. at 18. Despite the fact that special agents in the WRO "periodically perform protection duties" as necessary, a reasonable jury could certainly conclude that Plaintiff held "significantly different responsibilities" post-transfer. Forkkio, 306 F.3d at 1131 (quoting Burlington, 524 U.S. at 761). Defendant, accordingly, has not shown that Plaintiff's transfer, as a matter of law, was not an adverse employment action.

      Defendant nevertheless maintains it is still entitled to summary judgment because it has offered a legitimate, nondiscriminatory reason for Plaintiff's transfer, which she cannot overcome. Defendant argues and both AIG Farrell and SAC Chomicki testified that the legitimate reason for her transfer was that she herself requested it. See Reply at 15; Mot. at 6; Farrell Email; Farrell Aff. at 3; Chomicki Aff. at 4-5. Plaintiff, however, insists she merely "inquired about where she might transfer in response to hearing that the Agents might be moved around if the incoming Secretary of Labor did not want as much protection as the existing one had" and that Farrell must have been "confused." Opp. at 13; Pl.'s Decl. at 6. Dolce's testimony that Plaintiff told him that she had not requested a transfer, moreover, supports Plaintiff's account. See Dolce Aff., ¶ 8. This factual dispute is material: if, as Farrell testified, Plaintiff requested a transfer and was transferred pursuant to that request, her claim that her transfer was discriminatory must fail; if, on the other hand, as Plaintiff testified, she did not request the transfer, Defendant is left without a nondiscriminatory explanation for its action. Summary judgment is thus impermissible.

      Also disputed and similarly material is whether Chomicki told Plaintiff she was being transferred because of her status as a new mother. Compare Chomicki Aff. at 4-6 ("Neither myself nor ASAIC Aivazis told the [Plaintiff] that there was a reason, other than her own request, that she was being transferred."); Reply at 13 ("The comments about Plaintiff's being a

11

new mother had nothing to do with her reassignment."), with Opp., Exh. 12 (Pl.'s Aff.), ¶ 21 ("Dennis Chomicki informed me that I was being transferred due to my family.").

Because Plaintiff has provided evidence sufficient for a reasonable jury to find that her transfer was materially adverse and because material disputes of fact remain with regard to Defendant's nondiscriminatory explanation, the Court will deny Defendant's Motion with respect to the transfer issue.

**IV. Conclusion**

For the foregoing reasons, the Court ORDERS that:

1. Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART;

2. The Motion is GRANTED as to the failure-to-promote claim (Compl. ¶ 7.1.1);

3. The Motion is DENIED as to the transfer claim (Compl., ¶ 7.1.2); and

4. All parties shall appear for a status hearing on November 1, 2011, at 10:00 a.m.

**SO ORDERED**.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 19, 2011